IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CANDELA CORPORATION, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 08 C 949 |
| | ) | |
| v. | ) | Judge Charles R. Norgle, Sr. |
| | ) | |
| PALOMAR MEDICAL TECHNOLOGIES, INC. | ) | Mag. Judge Morton Denlow |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DR. STANLEY KOVAK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

Dr. Stanley Kovak hereby opposes Plaintiffs' Motion to Compel him to Produce Subpoenaed Documents (the "Motion"). The Motion seeks to compel Dr. Kovak, a third-party with no stake in the underlying patent infringement litigation, to produce confidential and sensitive patient treatment files – a task that will require him to review thousands of files. Plaintiffs' demand for these confidential medical records of Dr. Kovak's patients – who also do not have any involvement in this litigation and who have not consented to the disclosure of their records – will be extremely harmful both to Dr. Kovak's practice and to his patients.

Moreover, Plaintiffs have failed to establish that *any* of these files are relevant to the claims or defenses of the actual parties in the underlying lawsuit. The Motion – one of at least ten such "cookie-cutter" motions Plaintiffs have directed against various doctors across the country – represents an improper attempt by Plaintiffs to have this Court aid Plaintiffs' fishing expedition by enforcing an overly broad subpoena *duces tecum*. The first court to rule on one of Plaintiffs' identical motions substantially denied Plaintiffs' request for another physician's records, and refused to require the production of a single confidential patient record.

For these reasons and the reasons stated below, the Motion should be denied.

BOST_387622.1

## BACKGROUND

The underlying patent infringement action concerns light-based dermatology products. Plaintiffs accuse Defendant Palomar Medical Technologies, Inc. ("Palomar") of infringing their patents through Palomar's manufacture, use, and sale of various products (the "Accused Products") to doctors.[1] Plaintiffs believe these Accused Products can be used to treat wrinkles in human skin, the subject matter of the products-in-suit. Plaintiffs contend that Palomar is inducing doctors to treat patients for wrinkles with Palomar products. Plaintiffs have not, and do not now, accuse Dr. Kovak of anything. Attempting to find some possible evidence to support their inducement theories against Palomar, in early November 2007, Plaintiffs served a subpoena on Dr. Kovak, along with identical subpoenas served on approximately 22 other physicians across the country (the "First Subpoena"). In the First Subpoena, Plaintiffs requested documents spanning 34 separate categories.

Dr. Kovak retained the law firm of Foley & Lardner LLP (which also represents Palomar in the underlying litigation) and objected to the First Subpoena by serving objections pursuant to Fed. R. Civ. P. 45(c).[2] In response, Plaintiffs withdrew the First Subpoena (along with the subpoenas it had served on all of the other physicians represented by Foley & Lardner LLP). On or about December 4, 2007, Plaintiffs served the current subpoena (the "Subpoena").

The Subpoena seeks communications between Dr. Kovak and Palomar, as well as

---

[1] The Accused Products are used for aesthetic laser treatments. The products consist of handheld attachments used with Palomar's laser and pulsed light base platforms. The handpieces are named the Lux 1540, the Lux 1540-Z, the LuxIR, the LuxDeepIR, the LuxB, the LuxG, and the LuxY.

[2] Plaintiffs contrast Dr. Kovak to another physician "who chose to not be represented by Palomar's counsel" and who "voluntarily produced a highly relevant set of documents . . . obviating Plaintiffs' filing of a motion to compel for that physician's documents." (Motion, p. 4.) That referenced physician is one Tiffani K. Hamilton, M.D., who works on behalf of Plaintiff Candela in marketing Candela's products. (See Plaintiff Candela's "Clinical Bulletin No. 6" featuring Dr. Hamilton, a copy of

marketing and product information that Palomar provided to Dr. Kovak, apparently directed to identifying any inducement by Palomar to use the Accused Products to treat wrinkles. (<u>See</u>, <u>e.g.</u>, Subpoena, request nos. 3, 6, & 10.) However, the Subpoena goes further, and also seeks Dr. Kovak's patient treatment records themselves. (<u>See</u>, <u>e.g.</u>, Subpoena, request nos. 4, 5, & 9.) In fact, the Subpoena extends to thousands of such patient files by calling for all treatments that involved any "Wrinkle Treatment." (<u>See</u> <u>id.</u>) The term "Wrinkle Treatment" is broadly defined in the Subpoena as the "application of Electromagnetic Radiation to skin for treatments that provide as a primary or peripheral benefit treating wrinkles, fine lines or rhytides/rhytids . . . correction of skin laxity, or performing skin smoothing, skin tightening, skin or facial rejuvenation, photorejuvenation, photofacials, skin resurfacing, tissue coagulation or improvement of skin texture or tone." (<u>Id.</u> at 5.) This broad list of treatments encompasses virtually every possible light based dermatological treatment including scars, vascular lesions, pigment lesions, and acne, as well as any treatments of actual skin wrinkles.

On December 14, 2007, Dr. Kovak objected to the Subpoena pursuant to Fed. R. Civ. P. 45(c). Dr. Kovak explained, *inter alia*, that the burden of responding to the Subpoena would be onerous and the production of confidential records would be detrimental to him and his patients for several reasons. First, the patient records contain their medical histories and other sensitive personal information (including photographs). (Dr. Kovak Decl., ¶ 7.)

Second, Dr. Kovak's patient records are maintained alphabetically. (Dr. Kovak Decl., ¶ 4.) They are not arranged by the date when each patient was seen or the type of procedure or treatment performed on the patient. (Dr. Kovak Decl., ¶ 4.) Dr. Kovak has more than 14,000

---

which is attached hereto as <u>Exhibit A</u>.) Unlike Dr. Kovak, Dr. Hamilton is not an independent third-party.

3

patient records in his possession. (Dr. Kovak Decl., ¶ 3.) Dr. Kovak estimates that it would take several months to review the medical records in his possession to just determine what treatments were used on individual patients. (Dr. Kovak Decl., ¶ 3.) There are only 4 administrative employees working with Dr. Kovak; the services of these employees are essential to the operation of Dr. Kovak's office. (Dr. Kovak Decl., ¶ 5.) If these individuals were required to take time away from their normal duties to assist Dr. Kovak in reviewing the records, Dr. Kovak's practice would suffer significant harm as a result of the allocation of resources away from patients and the operation of Dr. Kovak's practice. (Dr. Kovak Decl., ¶ 6.)

Third, the disclosure of confidential patient records could be ruinous to Dr. Kovak's practice, because his patients' privacy would be irreparably violated. (Dr. Kovak Decl., ¶ 7.) The invasion of patient privacy would undermine the confidence reposed by Dr. Kovak's patients in his practice, and would likely prompt many of his patients to discontinue their association with Dr. Kovak. (Dr. Kovak Decl., ¶ 7.)

In late December and early January, counsel for all parties met and conferred about Dr. Kovak's objections and his concerns on his own behalf and that of his patients. Dr. Kovak agreed to produce any communications he had with Palomar and any marketing or similar product information from Palomar. (Tolliver Decl., Exhibit 5.) Despite this offer, and without regard to patient confidences or Dr. Kovak's reputation and medical practice, Plaintiffs continue to insist that Dr. Kovak also review, collect, and produce all of his requested patient records and treatment files.

## ARGUMENT

The Motion seeks to enforce a Subpoena that seeks the harmful disclosure of confidential patient information and medical treatment records. The Subpoena also is not narrowly tailored to seek the discovery of only relevant or potentially relevant documents, and is overly broad,

4

unduly burdensome and oppressive to both Dr. Kovak and his patients, and, therefore, should be denied.  See Fed. R. Civ. P. 26(b)(1) & 26(b)(2)(C).

## I. THE HARMFUL DISCLOSURE OF CONFIDENTIAL PATIENT RECORDS IS UNJUSTIFIED.

Dr. Kovak's patients would balk upon learning that their private patient files containing highly sensitive personal information had been disclosed without their consent to parties in a litigation that has no connection to them or to their doctor.  Although the interests of these patients would be irreversibly affected by such production, none of the patients are represented in this matter or in the underlying action.  Notably, none of the authorities cited by Plaintiffs involve such a wholesale invasion to patient privacy that Plaintiffs are demanding through their request for the production of thousands of confidential patient records from a non-party physician's private practice.[3]

There is a "strong federal policy in favor of protecting the privacy of patient medical records."  EEOC v. Boston Mkt. Corp., 2004 U.S. Dist. LEXIS 27338, *18 (E.D.N.Y. Dec 16, 2004); 42 U.S.C.S. §§ 1320d-1329d-8, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").[4]  Plaintiffs propose only passing consideration to this "strong federal policy" favoring patient confidentiality by offering to have the patient records produced under the protective order entered in the underlying action.  The underlying protective order, however, lacks any reference to medical records or patient information (see Tolliver Decl., Exhibit 2) and

---

[3] Plaintiffs' reference to Boston Mkt. Corp. (Motion, p. 13) is notable because – unlike the respondent to the Subpoena in this case – the respondents in Boston Mkt. Corp. were doctors who treated the *plaintiff* and the plaintiff had specifically placed her medical condition at issue in that lawsuit.  EEOC v. Boston Mkt. Corp., 2004 U.S. Dist. LEXIS 27338, *2 (E.D.N.Y. Dec. 16, 2004).  Even there, the court circumscribed the type of information that could be provided to the requesting party.  Id. at *20-21.

[4] In addition, "[p]atients, physicians, and hospitals in Illinois rely on Illinois' strong policy of privacy of medical records."  Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 932 (7th Cir. 2004).

5

the Plaintiffs have made no effort to have it altered to accommodate these circumstances. Neither Dr. Kovak nor any of the unrepresented patients had an opportunity to negotiate the terms of the protective order. In addition, individual patients whose records were disclosed to Plaintiffs would lack the resources and/or standing to enforce the terms of such an order in the event their records were disclosed to others. See Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1325 (Fed. Cir. 1990) (rejecting patent holder's "argument that the protective order . . . obviates [respondent's] objections to discovery. The protective order is not a substitute for establishing relevance or need." And noting that "[i]t would be divorced from reality to believe that either party" to the underlying litigation "would serve as the champion" of the respondent, and "disclosure of its information depends on the action by a court before whom it has no standing."). Thus, the existence of a protective order provides no justification for the wholesale violation of patient trust in the confidentiality of their own records.

In the event that confidential patient information were improperly disclosed (whether intentionally or unintentionally), the resulting harm would be irreversible and irreparable. For example, there would not be adequate remedies available to a patient whose treatment photographs were utilized in open court or otherwise released into the public domain. And while the risk of this occurrence may be small, it only exists if any medical records are produced pursuant to the Motion. Thus, in light of the unknown risk of further dissemination of confidential patient records and the high degree of harm to the unsuspecting patients (as well as to Dr. Kovak) that would result from such disclosure, Plaintiffs have failed to justify the production of Dr. Kovak's patient records.

The disclosure of confidential patient records also risks ruining Dr. Kovak's practice and his professional reputation, because such an invasion of patient privacy would likely deter

6

present and future patients from seeking treatment from Dr. Kovak. See <u>Northwestern Mem'l Hosp.</u>, 362 F.3d at 930 (upholding lower court's decision to quash subpoena for medical records, and noting that "there is a potential psychological cost to the hospital's patients, and a potential cost in lost goodwill to the hospital itself, from the involuntary production of the medical records even as redacted"). In sum, the burden of producing confidential patient records outweighs the benefit to any party that would flow from their disclosure.

## II.   ANOTHER COURT HAS ALREADY DENIED PLAINTIFFS' IDENTICAL MOTION TO COMPEL.

On February 21, 2008, the United States District Court in the Southern District of New York (McKenna, D.J.), substantially denied Plaintiffs' nearly identical motion to compel the production of documents from another physician. A copy of the Memorandum and Order of February 21, 2008, in miscellaneous action M-8-85, S.D.N.Y. (the "Order") is attached hereto as <u>Exhibit B</u>. Other than the name of the physician targeted by Plaintiffs, the motion filed by Plaintiffs in the S.D.N.Y. action was identical (*i.e.*, word for word) in form and substance to the motion pending here. The court in that district ruled that Plaintiffs' identical subpoena served in New York "to a non-party practicing physician, is burdensome and oppressive." (Order, p. 1.) (Emphasis added.) The court allowed Plaintiffs' motion only to the extent that it covered certain materials that were previously offered for production by the physician (*e.g.*, various communications and seminar materials), but denied Plaintiffs' request for all other subpoenaed materials – specifically including confidential medical records. (Id. at 1-2.) In this regard, the Order provides that "[t]he Court is not persuaded that plaintiff needs the information sought about specific patients' cases." (Id. at 2.) Plaintiffs have not attempted to distinguish their motion in New York from their identical motion pending in this Court and, therefore, this Court should similarly deny Plaintiffs' Motion to Compel.

### III. THE MOTION SHOULD BE DENIED BECAUSE THE SUBPOENA EXCEEDS THE PERMISSIBLE SCOPE OF DISCOVERY.

The underlying litigation involves three patents directed to *the treatment of wrinkles* in human skin. (Motion, pp. 1-3.) The vast majority of the asserted patent claims are method claims – claiming the method of actually treating patients to remove their wrinkles. Palomar is the sole defendant accused of infringement. Palomar, however, does not treat patients. Like its competitor, Plaintiff Candela Corporation, Palomar only manufactures and sells light-based skin treatment products. Therefore, to prove Palomar has infringed the method claims, Plaintiffs must attempt to find doctors who are treating patients for wrinkles with Palomar's Accused Products and then must show that Palomar somehow actively induced those doctors to do so. See 35 U.S.C. § 271(b); Trustees of Columbia Univ. v. Roche Diagnostics GMBH, 272 F. Supp. 2d 90, 104 (D. Mass. 2002) (holding "this statute is analogous to a criminal statute imposing liability for one who acts as an accessory before the fact.").[5]

As a result, even if there are doctors using Palomar's Accused Products to treat wrinkles, any evidence of such treatments is *only relevant* to Palomar and this lawsuit *if* Plaintiffs can show Palomar intentionally induced those doctors to perform those treatments. See Hewlett-Packard Co. v. Bausch & Lomb, Inc., 909 F.2d 1464, 1469 (Fed. Cir. 1990) (holding "proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement."). Plaintiffs' subpoenas demand potential evidence of any such inducement by including several categories directed to any communications between Dr. Kovak and Palomar, as well as marketing materials, presentations, and other materials provided by

---

[5] Plaintiffs concede they have not sued the third-party doctors for infringement and further concede they seek the doctor's patient records in connection with attempting to prove inducement claims against Palomar. (Motion, pp. 1 and 3.)

8

Palomar to Dr. Kovak.  (See, e.g., Subpoena, request nos. 3, 6, & 10.)

Plaintiffs' subpoenas, however, do not stop with potential evidence of inducement by Palomar.  Instead, they assume such evidence exists and simultaneously demand Dr. Kovak's highly sensitive patient treatment records, including all documents that show the number of times Dr. Kovak used one of the Accused Products, documents concerning the evaluation of treatment with an Accused Product, and photographs of patients.  (See, e.g., Subpoena, request nos. 4, 5, & 9.)  This puts the cart before the horse.  If Palomar has not induced Dr. Kovak to use the Accused Products in an infringing manner, then Dr. Kovak's treatment records and patient files are wholly irrelevant to the underlying action and not the subject of proper discovery.  Without evidence of Palomar inducing Dr. Kovak, there is no reason to subject Dr. Kovak to the risk, burden, and injury of having to search and produce his patient records.

The Federal Circuit has rejected improper attempts to obtain irrelevant material from third-parties.  See, e.g., Micro Motion, Inc., 894 F.2d 1318.  In Micro Motion, a patent owner sought to obtain discovery of confidential business information from a non-party in connection with a patent infringement suit.  894 F.2d at 1319.  The non-party respondent sought to quash the patent owner's subpoena on the basis that the information sought (*i.e.*, records concerning use of the relevant products and customer information) was not relevant, the confidentiality of the information was essential, and disclosure would cause the respondent "serious, if not irreparable, injury."  Id. at 1321.  The Federal Circuit affirmed the judgment of the district court denying the patent owner's requested discovery because the patent owner was engaging in "merely speculative inquiries in the guise of relevant discovery."  Id. at 1328.  The Federal Circuit further found, as is the case with Dr. Kovak's patient files here, that the potential damage that would follow the disclosure of confidential business information was substantial, and that the patent

9

owner had not sufficiently demonstrated that the requested discovery was sufficiently relevant and necessary.  Id. at 1325.

Before invading the privacy of Dr. Kovak's patients, disrupting Dr. Kovak's practice, and risking the destruction of Dr. Kovak's reputation and livelihood, Plaintiffs must first establish that the patient records they seek are relevant and discoverable.  If the communications with Palomar and other materials Dr. Kovak has produced do not establish any inducement, the more sensitive patient records are irrelevant and need not be produced.

### IV. THE MOTION SHOULD BE DENIED BECAUSE, EVEN IF ANY OF THE PATIENT INFORMATION IT SEEKS COULD BE RELEVANT, THE SUBPOENA IS OVERBROAD.

Plaintiffs also face another steep hurdle here.  *None* of the Accused Products are approved by the United States Food and Dug Administration ("FDA") for the treatment of wrinkles.  Instead, they are approved for treating other skin conditions including hair removal, vascular and pigmented lesions, and scars.  So in order for Plaintiffs to prove infringement by Palomar, they must find doctors who are using the Accused Products "off-label" for treating wrinkles and show that Palomar intentionally induced those doctors to perform those "off-label" treatments.  See Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1365 (Fed. Cir. 2003) (requiring evidence of manufacturer's intentional inducement of doctor's "off-label" uses).

Desperate to find any such evidence of doctors treating wrinkles with Palomar's products, Plaintiffs served, and now move to enforce, overbroad subpoenas in an improper fishing expedition.[6]  The Subpoena employs a definition of "Wrinkle Treatment" that goes well

---

[6] Illustrating how broadly and haphazardly Plaintiffs have cast their nets, Plaintiffs served one of their subpoenas on a physician who does not use or possess a *single one* of the Accused Products. Undeterred, Plaintiffs filed a motion to compel the production of that physician's documents in the Eastern District of Virginia.

beyond actually treating wrinkles. (See Tolliver Decl., Exhibit 2, p. 5.) The Plaintiffs' definition of "Wrinkle Treatment" includes broad terms loosely used in the skin care industry by dermatologists to mean treating a wide array of skin conditions – "skin rejuvenation," "photofacials," etc. These terms encompass many different types of skin treatment, and expand the Subpoena to cover much more than simply any treatments of wrinkles. (See id.)

Thus, the issue is not one of "confusion" as Plaintiffs claim (Motion, pp. 12-13) over what their definition of "Wrinkle Treatment" means, it is one of overbreadth and relevance. The Plaintiffs' offer to remove the reference to "Wrinkle Treatment" altogether (Motion, pp. 13 n.11) only serves to expand the scope of the Subpoena, as the removal of such reference leaves the request for records unrestricted.

Plaintiffs should not be allowed "to undertake wholly exploratory operations in the vague hope that something helpful will turn up." Mack v. Great Atlantic & Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989). Plaintiffs' patents-in-suit are directed only to "treating wrinkles." (Motion, p. 3) Plaintiffs, therefore, are only entitled to evidence about treating wrinkles. Assuming Plaintiffs can first show the Court some evidence of Palomar inducing Dr. Kovak to treat wrinkles, (see, supra, Section II), Dr. Kovak should only be required to review and produce treatment records and patient files of such actual wrinkle treatments and not files relating to the treatment of other skin conditions covered by Plaintiffs' overbroad definition. See Micro Motion, Inc., 894 F.2d at 1328 (rejecting patent owner's attempt to engage in "merely speculative inquiries in the guise of relevant discovery"); Mack, 871 F.2d at 187.

## V. THE MOTION SHOULD BE DENIED BECAUSE THE SUBPOENA IS OPPRESSIVE AND UNDULY BURDENSOME.

Rule 45(c)(1) requires that "[a] party or an attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person

subject to the subpoena." Fed. R. Civ. P. 45(c)(1). Moreover,

> [t]o determine whether a subpoena is unduly burdensome, a court may weigh a number of factors, including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed.

Cumberland Truck Equip. Co. v. Detroit Diesel Corp., 2006 U.S. Dist. LEXIS 92351, *2-3 (D. Ill. 2006) (internal citations and quotations omitted). In addition to the damage to Dr. Kovak and his patients that would result from the production of confidential patient records discussed in Section I above, the Plaintiffs' failure to show the relevance of the documents discussed in Section II, and the overly broad definitions and requests discussed in Section III, additional factors in determining whether there is an undue burden on Dr. Kovak weigh in favor of denying the Motion.

      A.      <u>Dr. Kovak Is Not A Party To This Action.</u>

"In keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." United States ex rel Tyson v. Amerigroup Ill., Inc., 2005 U.S. Dist. LEXIS 24929, *14 (D. Ill. 2005); see also Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998) (noting that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). It is particularly relevant to this Motion that Dr. Kovak has no stake in the underlying litigation, and was not involved in any transactions that would have led him to anticipate that he would be subpoenaed in this action. See United States ex rel Tyson, 2005 U.S. Dist. LEXIS 24929, *14; Cusumano, 162 F.3d at 717 (upholding District Court's denial of motion to compel and stating that "[i]t is also noteworthy that the respondents are strangers to the antitrust litigation; insofar as the record reflects, they have no dog in that fight. Although discovery is by definition invasive, parties to a

12

law suit must accept its travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations.").

Since Dr. Kovak is a non-party respondent with no connection to this action, Plaintiffs' reliance on Bridgeport Music, Inc. v. UMG Recordings, Inc., 2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) (Motion, pp. 10-11), is wholly misplaced. In Bridgeport Music, Inc., the non-party respondent was "the drafter of the agreement at issue," was "indisputably integral to the parties' relationship during the crucial time period," and "as a former attorney for one of the parties, it was foreseeable that he would be asked for records related to services he performed for his former client that is now the subject of litigation." 2007 WL 4410405, * 3 n.4. In addition, the subpoena there contained "only one document request and that request is relatively narrow," (id. at *2) and "the information in question is not confidential, nor is the request overly burdensome" (id. at *3 n.5). Plaintiffs do not contend that Dr. Kovak was involved in any aspect of the underlying dispute here (and there would be no basis for such a contention) and, thus, the burden of responding to the Subpoena is particularly unwarranted here. Moreover, in contrast to Bridgeport Music, Inc., the document requests here are broad, they are overly burdensome, and they seek confidential information.

> B. The Subpoena Would Force Dr. Kovak To Divert Limited Resources Away From His Patients And Practice Thereby Disrupting His Practice And Causing Irreparable Harm.

Plaintiffs argue that they made significant modifications – withdrawing the First Subpoena and offering to reduce the scope of the current Subpoena – in order to avoid imposing undue burden on Dr. Kovak. However, the breadth of the documents sought by Plaintiffs through the Motion belies this assertion. The remaining requests require the review of, *inter alia*, thousands of patient files. (See Dr. Kovak Decl., ¶ 2.)

13

The Subpoena's limitation to a particular timeframe or treatment is not determinative of the burden on Dr. Kovak. Dr. Kovak's medical records are maintained alphabetically by patient, and not categorized by the type of laser treatment provided to each patient. (Dr. Kovak Decl., ¶ 4.) Thus, in order to determine which records – among more than 14,000 records – are responsive, Dr. Kovak would have to review practically all of his patient records to identify any responsive documents. As discussed above, Dr. Kovak estimates that it would take several months to review his medical records. (Dr. Kovak Decl., ¶ 3.) The diversion of Dr. Kovak's limited resources from the operation of his practice would cause an unscheduled interruption to his business, thereby causing irreparable harm, accordingly, the Motion should be denied. (See Dr. Kovak Decl., ¶ 7.)

C. Specific Requests.

While the foregoing discussion addresses the entirety of the Subpoena, the following points are relevant to the determination of the propriety of Plaintiffs' request for an order compelling the production of documents described by each of the categories.

To the extent that Dr. Kovak has responsive documents in his possession, custody, or control (as specifically indicated below), he will produce documents in response to the following categories:[7]

- *Category No. 1*: Dr. Kovak has no such documents.

- *Category Nos. 3 & 10*: Dr. Kovak will produce communications concerning use of the Accused Products as limited and described by the Plaintiffs in the Motion.

- *Category No. 8*: While Plaintiffs already have any such documents, as they were previously produced by Palomar, Dr. Kovak will produce the requested documents in his possession, custody, or control to the extent they concern the Accused Products.

---

[7] Category No. 7 has been voluntarily withdrawn by Plaintiffs.

14

BOST_387622.1

In light of the fact that the remaining request for documents seek irrelevant information, implicate patient privacy concerns, and subject Dr. Kovak to unduly burdensome production, Dr. Kovak reiterates his objections to producing documents described in the following categories:

- *Category Nos. 2 & 6*:  Dr. Kovak's marketing of the Accused Products is only relevant if there is any evidence of inducement.  As more fully discussed in Section II above, unless there is evidence of inducement shown by any other document in Dr. Kovak's possession, his marketing materials – *i.e.*, those materials that he uses to market his own services – are irrelevant and will not be produced.

- *Category Nos. 4, 5, & 9*: For all of the reasons discussed above, Plaintiffs' request for these materials is beyond the scope of discovery and, to protect patient confidentiality, the requested materials will not be produced without a court order.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Dr. Kovak respectfully requests that the Plaintiffs' Motion to Compel be DENIED.

Dated:  February 26, 2008            Respectfully submitted,

    s/ Daniel A. Dingerson
Daniel A Dingerson, IL Bar No. 6282754
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
312.832.4500
312.832.4700

Stephen D. Riden, MA Bar No. 644451
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199-7610
617.342.4000
(*pending approval of Pro Hac Vice application*)

*Attorneys for Stanley Kovak, M.D.*